Bissell, J.,
delivered the opinion of the court.
The substantial controversy between the parties to this action is not presented by this record in such way that the court is at liberty to express its views respecting their legal status as it existed before this suit was begun. This took the form of condemnation proceedings to obtain title to a *500 little more than fifteen acres of land covered by water. About six miles northwest of Greeley there is a large lake in a natural depression of the land covering something like two hundred acres. All of it except the fifteen acres sought to be reached by this proceeding belonged to Seely, the appellee. As nearly as may be ascertained from the record, Seely was the owner of the land where the lake now is, and of other lands which could be irrigated from waters if they were stored in this natural depression. In 1872 the Greeley Colony built the Cache la Poudre Canal, which ran along the country some little distance above the lake and supplied water to its stockholders. As is always the case, there was a good deal of seepage from the canal and it gradually filled up this hollow. Seely was a stockholder in the canal, or a person entitled to water therefrom, and he made an arrangement with the association to run his water into the reservoir and store it there, and also to take whatever seepage waters might naturally make their way into the lake. It also served as a drainage for the adjacent farming lands, and some ditches were cut to render lands fit for cultivation which otherwise by reason of the seepage would be swamp lands and unavailable. The result of all this was the creation of this large lake. Aside from what has been stated, nothing was done by Mr. Seely with reference to obtaining title until 1889, when provision was made by statute for acquiring title to waste, seepage and spring waters, and protecting the rights of ditches which might utilize such water. Mr. Seely thereupon filed a record under the irrigation statute and attempted to acquire title. He had already taken water from- the reservoir by means of a ditch to irrigate a good deal of land, and had other lands which could likewise be watered from its source. We are not concerned with the character, extent or legality of his appropriation, because these matters are not called in question in the present proceeding. In making this reservoir some fifteen acres or more of land belonging to the appellant was flooded with water, and it was Mr. Seely’s purpose to further increase the general level *501 of the water for uses which he deemed legitimate. To bring about this result, it seemed to him to be necessary to condemn the land covered by the water. We will now state the real nub of the controversy, although it is not presented in such manner as to require an expression of our opinion with reference to it. The reservoir was utilized for other purposes than irrigation. It was stocked with fish and made a pleasure resort for the neighboring country. Seely likewise cut ice from it in the winter to supply the neighboring towns with this article of use and luxury. These collateral uses begot this litigation. Other parties desired to avail themselves of the gains and advantages resulting from such use of the lake, and evidently attempted to acquire title to this fifteen acres in order to deprive Seely of the exclusive use of water for these particular purposes. This is stated in order to illustrate the real animus of the suit, and also to illustrate one of the questions raised on the trial and urged here as error. After the initiation of this proceeding, when the cause was called it was set down for trial on a fixed date, and a jury demanded by the appellant. When the case was reached for trial a jury was impanelled and the parties proceeded to introduce their testimony. As soon as the cross-examination of the petitioner’s witnesses was commenced, counsel attempted to prove or show by the evidence he was able to elicit, the value of the water for the purposes above indicated. This was objected to and the court ruled this testimony out. When the respondent came to his side of the case, he undertook to pursue the same policy and introduce proof respecting it, which was likewise excluded. Thereupon the respondent made a motion that the trial be suspended and commissioners appointed to determine the necessity for the condemnation of this particular tract of land, which was refused.
Out of this grows the only question which is of sufficient consequence to disturb the judgment if it was resolved in favor of the appellant. It may be true the appellant is right in his contention that the reservoir could exist and all of *502 Mr. Seely’s rights be protected without the condemnation of these particular fifteen acres, and that the proceeding had an ulterior object, which would not either legally or legitimately support condemnation. About this we express no opinion, because the matter is not legitimately open to discussion. The whole question has been settled by the supreme court, and that tribunal has held that after the respondent demands a jury and enters -on a trial, it is too late to ask for the appointment of commissioners under the statute in order to determine whether or not a necessity exists for the condemnation of the land embraced in the petition. By proceeding to trial it is held he waives his right to the appointment of commissioners, and therefore the question of necessity is not an open matter, nor is it one which can be considered by the jury in their estimate of damages. Sand Creek Lateral Irrigation Co. v. Davis, 17 Colo. 326.
The court, then, did not err in refusing to permit the respondent to introduce this testimony, or prove any other injury save that which came from the appropriation of land of a proved value, with the resulting damage, if any, to the balance of the tract belonging to Siedler.
A great multitude of errors were assigned on the rulings of the court admitting and rejecting testimony. It would be quite impossible in the limits of any ordinary opinion to pass upon each one of these questions and sustain the court’s action by a direct expression supported by sufficient argument. The only thing we feel called upon to say is, the court tried the case on the proper theory and on the correct lines. In a proceeding to condemn land covered by water where there is no question respecting the title to the water itself other than that which comes from the ownership of the land beneath, there is no recoverable damage other than the value of the land taken and the resulting damage to the balance of what may be owned by the respondent. All waters in this state are now subject to appropriation, whether they be running waters, or waters coming from springs or derived from seepage. The appellee, so far as the record shows, *503 owned almost the entirety of the reservoir; made provision for its construction and the storage of water therein, and apparently had title to the water as against the appellant. There is nothing tending to impeach his title or to support any claim which Siedler could make to it.
The only other matter to which we need refer is what is recited in the bill of exceptions, that at the time of the argument to the jury, counsel attempted to argue a question of damage and was restrained by the court. This action does not seem to constitute error, nor is there anything in the record wherefrom we can determine that prejudice came to the appellant. From the statement in the bill of exceptions the elements of damage which counsel was restrained from discussing were those predicated upon the loss of the right to use the water and the surface of it for purposes other than irrigation, whereby the collateral advantages referred to might be enjoyed by Siedler. We must assume this to be true, because in the court’s instructions the jury were told that the respondent was entitled to recover not only the actual value of the land taken, but also whatever damage might have been proven to accrue to the .other portions of his farm by the taking of this particular piece. The instructions were not objected to ; they fairly stated the law; put the correct and only issues before the jury for consideration, and, whatever this ruling may have been, it could not so far as we see have been erroneous.
This disposes of all matters raised by the record, and since the court committed no errors in the trial of the case, the judgment must be affirmed.

Affirmed.